We'll turn next to 24-1188, K. A. v. Barnes. Ms. Brown? Thank you, Your Honor, and may it please the Court. I'm Christy Brown with my co-counsel, Suzanne Tahiri. We represent the appellant, K. A. Parenting is a fundamental right. When it comes to a state getting involved in custody and termination of parental rights, which all states do, the state can make its cake, but the role of the federal courts is to ensure that the baking ingredients are constitutional. K. A.'s case is about the case of a stay-at-home mother who dared to believe her daughters and accused her ex-husband of sexually abusing them, claims also reported by the girls' school and dance studio. In return, permanent termination of her parental rights is what she received. The department sought her daughters' removal from anyone who dared report abuse, including their school and their dance studio. The department conspired to protect the father rather than investigate what was happening to the children, and after repeated accusations of abuse, the department refused to continue to investigate and instead worked to remove the children from those who believed them. The policy, parental alienation, that was aggressively used by the defendants to remove my client's parental rights was a state department policy, not a state law, used by county departments across the state. Colorado now bans these kind of actions by a department of social services and recognized the policy as so out of bounds and unconstitutional in 2023 that it came in to stop the policy once it got exposed, but none of this happened in time to stop them from violating our client's fundamental rights. You're addressing the merits, and your problem is procedural. There's nothing a federal court, except the U.S. Supreme Court, can do to set aside the termination of parental rights. Do you agree with that? Isn't that the Rooker-Feldman doctrine? Justice Hart, I actually don't agree. I don't think Rooker-Feldman applies in this case, specifically because we're not asking the court, we're not saying the state court erred in its decision. Instead, we're saying the procedure that the department used to pursue the stripping of her parental rights violated procedural due process. Right, but your remedy is to seek overturning that termination, and that's a state court judgment, and we can't review it. Rooker itself was a challenge to the procedure of the state court, as I recall, not from having been around then, but from reading the case. And that's the same posture here. You can't argue that the violation of constitutional rights was in how the state court reached its decision. You're stuck with that decision. Sure, and Justice Hart, we're actually not arguing that the state court erred in how it reached its decision. Instead, we're arguing that the department, the county and state department, how it pursued the termination of rights against our client was unconstitutional. We have to start in reviewing the issues before us. We have to start with the proposition that her parental rights have been terminated, and there's nothing we can do about that. Well, Your Honor, I would disagree and say that – How do you reconcile your disagreement with Rooker-Feldman? Because, Your Honor, basically, for Rooker-Feldman to apply, we would have to be arguing that the state court erred, and we're instead arguing that the state law behind it was unconstitutionally applied to our client, and so the process violated her procedural due process. You're having to argue that the state court erred in revoking her parental rights, and you can't do that in federal court. You could have appealed or sought cert from the Supreme Court, U.S. Supreme Court, but we can't set aside that termination. And once we have that termination, that moots almost all, maybe all of your other arguments, because they depend on the fact that she still has parental rights. If she has no parental rights, she can't challenge the statute. She can't challenge the statute of limitations. So, Your Honor, the statute at issue, actually, that we cite, 19-3-6-12, actually still does apply to parents even if they don't have parental rights at the time. What it actually does is allows parents whose rights have been terminated to appeal longer than three years after their rights were terminated. And we're arguing that law is unconstitutional in application because it does not apply to her right now. When a parent's rights are terminated based on the policy of parental alienation, that statute can't apply. Instead, the statute can apply when your rights are terminated for any other reason when your children are in the custody of the state, or if the other parent, the custodial parent, dies, you can bring a case. But because her rights were terminated on parental alienation, which always means that there is another custodial parent, she does not have that exception that all other parents would have to bring an appeal of the termination of their rights on any other basis. And so that is why it's so key to this argument that parental alienation was an unconstitutional theory used against her by the state and county departments and why the procedural due process matters so much. There is a state decision that she can't timely challenge the termination of her rights. Is that correct? I'm sorry, I didn't quite catch that. There is a state court decision that she can no longer challenge the revocation of her parental rights because she's out of time to do that. Is that right? Yes, Justice Hart. That's a decision by the state court, and you want that overturned by challenging the constitutionality of the statute of limitations in the state. But what you have is a decision that she can no longer by the state court that she has had her parental rights terminated, and there's no way she can get them back. You agree that that's what the state court has ruled. Is that right? Not exactly, Justice Hart. I do not think they used this law to come to that decision. I think that's part of the error is that they don't think they can use this law. That's why we're asking for you to declare this law as unconstitutional because she would have a separate avenue to appeal the termination of her rights in state court if 169312 applied to her. Instead, the state court applied the appellate rule that gives her only 21 days from the termination of her rights to appeal, at which time she was in jail due to the defendant's actions, very wrongful actions against her, as we detail in the briefs. So, in fact, if this court found that the lack of applying 169312 to her was unconstitutional, she would have a different avenue to pursue the appeal in state court. What about the statute of limitations questions as to when she was on notice regarding the rights violation? So I understand your argument to say, well, but we're looking at when the Colorado Supreme Court denied review of her case. It's sort of the triggering event. There's law that says that may not be right. So can you help me understand, one, sort of when it's triggered that the clock starts to run on the statute of limitations, and also, well, maybe I'll let you answer that before we talk about equitable tolling. Sure. Thank you, Judge Federico. And I will try and reserve three minutes at the end for rebuttal. First of all, we think there are two specific reasons why the statute of limitations did not accrue at the time that she filed her case. First of all, it's true since Supreme Court cases, McDonough v. Smith and Thompson v. Clark of 2019 and 2022 cases, that showed when the government used a fabrication of evidence or malicious prosecution against someone in a 1983 action, their action didn't even accrue until the state court case ended. The Supreme Court used practical considerations and said, when the state is coming against you in court, you shouldn't then have to bring them in federal court. It is reasonable for the statute of limitations to accrue once your state case is over. And we believe, while those were criminal cases, this was a civil case. It's still similar when the state is going after you and false evidence is being used. The same practical considerations would apply in 1983 action. That would allow her statute of limitations to accrue on September 7th, 2021. We filed on June 20th, 2023. Or her DNN case didn't even close until April of 2023. So there's a few dates which could apply there. And, Judge Federico, the other statute of limitations argument is the ongoing violations doctrine. We would argue there's a prolonged violation of her rights because she still cannot see her children, her parental rights, a fundamental right, are still terminated until her daughter has reached the age of 18. And there are multiple cases, Haven Realty Corp., Peck v. Humphreys, Zenith Radio Corporation, which all speak to the ongoing violations doctrine. But do they do so in this context? Your Honor, they're not specifically child custody cases, but some of them are 1983 actions, which we have here. And some of them all talk about the prolonged violation of fundamental constitutional rights, which is a similarity here. All right. So you also argued equitable tolling. Yes, Your Honor. My understanding from the briefing is that, you know, equitable tolling is something we see in a lot of habeas cases. But in this context, the Colorado Supreme Court has never recognized a case where equitable tolling would apply. Is that right? Your Honor, I'm not, I think you may be right about the Colorado Supreme Court. However, the federal courts have recognized, including this court, that equitable tolling is appropriate, specifically when the defendant actively misled the plaintiff, which happened here, and when the plaintiff was prevented from asserting their rights in some extraordinary way. And we would argue that's also present here. And specifically, the prong of equitable tolling where defendants wrongfully prevented someone from timely filing. If you look at the record, we've detailed a lot of reasons for that, specifically that defendants sought to prevent our client's attorneys from accessing her record. My co-counsel was actually objected to getting her record during the time when she was in jail. And the defendants also specifically sought a gag order against her, which wouldn't even let her call a friend to help her get an attorney in court. So there are a lot of circumstances that we detail in the briefs that prevented her wrongfully from filing. We think that is a specific reason equitable tolling should apply. Our position would be the statute of limitations didn't begin to accrue. If this court disagrees, we would say equitable tolling should apply instead. Counsel, before you move on, can I just follow up with my colleague's question about the Rooker-Feldman doctrine? Are you taking the position that you are not asking us to set aside the state court decision? Justice, I thank you. Yes, that's the position we're taking. We are not asking you to set aside the state court decision. Instead, we're asking you to provide another avenue in state court for our client to appeal the termination of parental rights. If the statute 193612 were to apply to her, she would be allowed to appeal the termination of her rights, even though that 21-day time period has passed. And, in fact, many parents in other circumstances are allowed to appeal on that statute well beyond the 21 days. Oh, okay. Help me understand, then, what you are specifically seeking. I mean... Yes, Your Honor. What's unconstitutional and what would get you an alternate remedy in state court? Thank you, Justice Ide. We would argue specifically that a combination of saying the 21-day appeal time period and the lack of application... Wait, the 21-day appeal period is unconstitutional? Because 193612 doesn't apply to her. And most parents are given the exception of 193612. The only way this would ever apply to her is if her ex-husband were to pass away. Otherwise, when parents' rights are taken away for other reasons, say drug abuse, physical abuse, actual neglect of a child, they can still appeal to get their children back three years or more after the fact. But because her rights were terminated on the basis of a debunked and unconstitutional theory that the state of Colorado actually now bans, she cannot use this remedy to appeal in state court.  So, but I guess back to what specific ruling would you want from us that the entire system is unconstitutional? What specifically do you want us to say is unconstitutional? Yes, Justice Ide. I think it could be more narrow than that. I think specifically finding that when a parent's rights were terminated based on the debunked and unconstitutional theory of parental alienation, this remedy of 193612 should be applied to them. And they should be allowed to meet the same standards. The child has to also want to reconcile with the parent. There's a trial period. There are some safeguards in place. But that a parent whose rights were taken away based on parental termination should also be allowed to use this remedy past the three-year period since their rights were terminated on an unconstitutional basis. Counselor, how do I square your response that you're not asking us to weigh in on the parental rights termination with your prayer for relief? You're asking us to reverse and remand this back to the district court. But you mean your prayer for relief specifically. Number one says reverse the termination of plaintiff's parental rights and order a new hearing that plaintiff may appeal. So how do I square that with your response to Judge Ide? Thank you, Judge Federico. We asked for multiple things in our prayer for relief. And I do believe that if this court were to agree that the theory of parental alienation was unconstitutional and a lack of procedural due process, the state legislature, in its legislative intent, actually wrote that there is very little evidence ever used in cases which violates Sankofsky v. Craver, which says clear and convincing standard of evidence has to be used to terminate someone's parental rights. So if you found that the theory of parental alienation was unconstitutional, that wouldn't directly overturn the state court decision. But in effect, it would make her termination unlawful. Is there any reason why, after these adverse rulings by the state courts, you could not have sought a petition for certiorari from the U.S. Supreme Court to say that what happened in the state court violated your constitutional rights? Judge Hurst, I believe we thought going this route was the most beneficial to our clients. The defendants multiple times threatened her attorneys, had different attorneys she had threaten them so much that they actually withdrew from her case. So we're pro bono working on her case. And we believe that this was the best avenue. Can I just jump in there? I'm sorry, you have little time. So can you address your 11th Amendment argument? Yes, Justice. We believe that we specifically have an exception to the 11th Amendment immunity because we are suing a state official, Director Barnes, and an official from the county, Director Dawsey, who according to the county stands as an arm of the state in their official capacities. That's an exception, as you know, to the 11th Amendment. Immunity is when we're suing state officials in their official capacity and seeking prospective injunctive relief and declaratory relief under Ex parte v. Young. And so because her rights are still being violated right now, we're not seeking to remedy a past situation, but instead to stop the ongoing prolonged violation of her rights through injunctive and declaratory relief. If she were allowed to appeal under 163912, she would be able to fix her situation. Also, if the theory of parental alienation were considered unconstitutional, that would also be a declaratory remedy. Thank you. Thank you. Your time has expired. Thank you, Your Honor. Mr. Carty, I understand you want to split time. It almost never works well, but are you dividing that up by what issues? We are. Okay. We are dividing it up by issues. So should we give you ten minutes, five minutes, seven and a half minutes? I'm shooting for ten. Okay. So you see how it works. Okay. May it please the Court, Deputy County Attorney Ryder Mott, on behalf of Defendants, Apoese, Arapahoe County, the Arapahoe County Department of Human Services, and Michelle Dossey. With me at council table is Jennifer Carty of the Colorado Attorney General's Office, who represents Michelle Barnes. This court should affirm the district court's dismissal of K.A.'s complaint for four primary reasons. First, all of plaintiff's claims are barred by 11th Amendment immunity, where only official capacity claims have been asserted. Second, on statute of limitations grounds, where plaintiff failed to timely assert her claims and has failed to meet the requirements for entitlement to equitable tolling. Third, on Ruker-Feldman grounds, where all of plaintiff's injuries stem from state court orders, and she asked the federal court to overturn those orders and restore her parental rights. And fourth, on the issue of standing, which my colleague, Ms. Carty, will address. I'd like to start by discussing the issue of 11th Amendment immunity. Plaintiff has never meaningfully responded to this argument. Instead, both before the district court and again in her opening brief and in her reply brief, plaintiff argued qualified immunity, a defense that was never raised by the defendants, who are sued only in their official capacity. Thus, plaintiff has not provided any basis why either the Arapahoe County Department of Human Services or the Colorado Department of Human Services are not arms of the state and not entitled to 11th Amendment immunity, and it is plaintiff's burden to establish jurisdiction. The only argument plaintiff makes for avoiding 11th Amendment immunity is to argue the immunity would not bar her declaratory or injunctive claims. The exception to 11th Amendment immunity for injunctive relief under ex parte young, however, only applies to claims for prospective relief, not to redress past harms. Here, where plaintiff admits in her complaint at paragraph 111 and paragraph 115 of her proposed amended complaint that her DNN case is closed and final, she cannot establish any likelihood of continuing harm or ongoing actions on behalf of the department or the state. She seeks to declare declarations that certain state laws are unconstitutional, does she not? Well, I'd like to address that. That's a good point, Your Honor. The one state law that she seeks to challenge is a statute. It's 19-3-612 of the Colorado revised statutes, and that statute specifically has no applicability to plaintiff because that statute only addresses a situation. It was a statute written by the Colorado legislature to address situations where children linger in the custody of the Department of Human Services after parental rights are terminated. It has no application to the situation plaintiff is in where the other spouse is given custody of the children. That's not an 11th Amendment argument that you're making there. I understand that's not an 11th Amendment argument I'm making. To the extent she seeks declarations that certain laws or practices are unconstitutional going forward, there's not an 11th Amendment problem with that, is there? There's not an 11th Amendment problem. There's another problem, and the problem is that that statute has no application to her. And what she asked this court to do is to rewrite the statute and create a new remedy that would apply to situations where custody of the children are given to another parent or a child is adopted. In those circumstances, to apply this remedy, which under state law only applies when children remain in the custody of Human Services and linger in the custody of Human Services after termination hearing. And so, again, this court doesn't have the authority to create new remedies under Colorado law or to rewrite the law as plaintiff would like it to be. Simply seeking a declaration that this statute, which has no application to her, should apply to her, really isn't the role of this court. And so I don't think there's a basis for that. Go ahead. So with that in mind, because the defendants are entitled to 11th Amendment immunity, I do not believe this court has to decide the issue of statute of limitations. But if the court does, the statute of limitations, too, would bar plaintiff's claims. There's no dispute the plaintiff did not timely file her claims within the two-year statute of limitations, which would have started to accrue with respect to her familial association claims when the department took custody of her children on February 22nd, 2019, or no later than August 25th, 2020, when the department terminated her parental rights. The same is true with respect to her challenges with respect to the protective order, and the subsequent contempt citations, which would have started to accrue in May 2020 when the first motion for contempt was filed. Here, plaintiff waited until June 20th, 2023 to file her complaint, well outside the two-year statute of limitations for asserting claims in Colorado, Section 1983 claims in Colorado. Thus, given that plaintiff didn't timely file her claims, her statute of limitation defense turns on the question of whether she's entitled to equitable tolling. It's important to note, however, that a district court's refusal to apply equitable tolling is reviewed under an abuse of discretion standard, not under the more forgiving de novo standard. Here, there's ample evidence in the record the district court pointed to that shows that plaintiff was aware of her claims and failed to act diligently in bringing them, supporting the district court's decision. Equitable tolling, which is determined in reference to state law, is allowed in two circumstances in Colorado. First, in cases of truly extraordinary circumstances, and the second is where defendants prevented plaintiff from filing her case. Plaintiff cannot satisfy either of those tests. With respect to the extraordinary circumstances test, plaintiff claimed she was incarcerated and lacked access to her records during COVID, meaning she could not timely file her lawsuit. But despite her incarceration, during this same period of time, the record shows that her attorneys were bringing similar constitutional claims and litigating them in state court, foreclosing her ability to say she could not have brought these claims. The first example of this, which was relied upon by the district court, was plaintiff's attorney, the same attorney who's representing her in this action, filed a habeas petition on May 20th, 2021, raising similar First, Eighth, and Fourteenth Amendment issues, the same constitutional claims she's asserting in this case. So both plaintiff and plaintiff's counsel were aware of these constitutional claims and still failed to file suit, waiting more than two years after filing the habeas petition to bring this action. But doesn't plaintiff also allege that she was effectively denied access to counsel on this issue and that she was denied access to the record of the proceeding that would be needed for her to file a complaint? Well, I think that that's belied by the record, again, because her attorney was raising these same issues, the same constitutional claims during this time period through the habeas petition. The other example of that is found in the Court of Appeals decision on plaintiff's challenge to her third and fourth contempt citations. And in that decision, on page 238 and 239 of appellate's appendix, the Colorado Court of Appeals notes that in September 2020, plaintiff's counsel filed Rule 59 motions challenging the constitutionality of the protective order, which is more evidence that they were aware of these issues. And the Court of Appeals, in that same opinion on page 248 of the appellate appendix, made a specific finding that K.A. was aware in December 20th because she discussed with her friends the possibility of hiring a First Amendment expert and appealing the protection orders. She just did not seek that remedy. So these documents in the record show that both plaintiff and plaintiff's counsel were aware of these issues and failed to timely act. Is that discussion with friends the one that she was held in contempt for engaging in? I am not positive on that, Your Honor. I do know, though, even more crucially, I think, to this claim about extraordinary circumstances, however, is the fact that plaintiff was incarcerated for less than 10 months, from a period of time of August 30th, 2020, through June 12th, 2021. And that's found at paragraph 75 of the complaint. The reason that's important is even if this court found extraordinary circumstances and decided to toll the statute of limitations for the entire period plaintiff was incarcerated, she still waited more than two years after being released from the jail to file her claim, which shows that she wasn't acting diligently, which is a requirement for the extraordinary circumstances test under the lame bull decision of the 10th Circuit, July 26, 2022. Similarly, plaintiff cannot establish that defendants prevented her from filing her lawsuit. Plaintiff's argument is that defendants hid evidence of their actions, and she did not learn about the basis of her action until she was contacted by a former county caseworker, Robin Nyseta. However, as found by the district court, and that discussion with Ms. Nyseta happened after she filed this lawsuit. But as found by the district court, plaintiff, after obtaining the Nyseta affidavit, filed a complaint that included all of the same claims she had previously filed. So the district court found, and I found correctly, that it doesn't show that plaintiff was unaware of the basis of her claims. In fact, we know she was aware of the basis for her claims based on the earlier 2020 and 2021 Rule 59 motions and habeas petition. So there's nothing that plaintiff can point to that shows that defendants prevented her from being able to timely file her lawsuit in this case. Counsel, can I just stop you there and ask, what do you think the order of decision is here? I guess you've said the 11th Amendment. If we find that you prevail on the 11th Amendment, then we're done, correct? I believe you're done. I mean, I think the court could go in any order because I think if the court decided the statute of limitations in our favor. Is that a jurisdictional issue, statute of limitations? I mean, I believe it is at this point when it's established that it wasn't timely filed based on the allegations in the complaint. And where does Rooker-Feldman fit in there? And again, I think this court could start with Rooker-Feldman and decide on Rooker-Feldman that her claims are barred jurisdictionally. Because again, all of her claims stem from these state court orders. How about as between the 11th Amendment and Rooker-Feldman? I mean, again, I think... You think we could start anywhere. You could start on any of those issues, and I think we clearly win on any of those procedural grounds, jurisdictional grounds. Thank you. You've got less than four minutes left. Yeah, real quickly, and then I'll turn it over. Simply put, plaintiff is asking this court for a do-over by seeking to collaterally attack all of the state DNN orders through this federal lawsuit and asking this court to restore her parental rights. Federal courts, however, lack jurisdiction to issue domestic orders or to sit as super appellate courts in reviewing state court decisions. Plaintiff has had a lot of process and opportunities to make these arguments in state court and failed to timely or successfully do so. Thus, this court lacks jurisdiction to issue the relief requested by plaintiff, and thus dismissal of her complaint should be affirmed. And at this point, I'll turn over the rest of my time to Ms. Carty. May it please the court, Jennifer Carty on behalf of Director Barnes. Plaintiff fails to demonstrate standing to bring suit against Director Barnes in her official capacity for three reasons. One, she fails to identify a state statute with which the State Department has a connection of enforcing that's tied to her injuries. Two, she fails to plead sufficient facts to establish a state-enforced custom or usage. And three, because of those two things, there is nothing for this court to enjoin. As this court knows, to establish standing, the plaintiff must plead sufficient facts that the government entity is the moving force behind her injury. And she has to show that this court has the ability to redress her injuries. She has not done so here. She has not established a meaningful nexus. To the extent she alleges an informal custom of parental alienation, the facts that she's pled do not support an inference that there exists a widespread, persistent, and well-settled custom across the 64 counties that the State Department is responsible for supervising. She identifies a single case in a single county. She also alleges a conclusory statement that the county attorney that acted in her case uses this parental alienation theory to terminate the rights of mothers. But conclusory statements and pointing to a single case is insufficient under the case law to demonstrate a widespread, settled practice by the State Department. To the extent the plaintiff argues that House Bill 23-1178 shows that the State Department has this custom, you'll note that this legislation cites to Title 14. Title 14 is domestic relations. This concerns parental allocation proceedings for every divorce case in the state of Colorado that allocates parental rights when children are involved. This does not involve Title 19 or the Department as a party. Counsel, do you agree with your co-counsel about sort of whether we need to reach standing if we were to decide this on other grounds such as statute of limitations? Your Honor, I would agree with my co-counsel that any of these bases would satisfy grounds on which we would prevail. I actually don't think that standing should be the primary. I think 11th Amendment or statute of limitations is appropriate. We don't have jurisdiction to address statute of limitations. If we don't have jurisdiction to address issues, we can't. Yes, then 11th Amendment immunity would be the primary and then standing the secondary. In her appeal brief, she cites only to another statute, 19-3308, Section 4A, which was not raised in the briefing below and was waived. She also refers to Title 19 generally. This lacks specificity, provides no notice to this court or the Department as to what she's seeking to enjoin. But I will say that Title 19 includes responsibilities for various other agencies and the State Department, including the Office of the Child Protection Ombudsman, the State Registrar of Vital Statistics, and the Department of Public Health and the Environment. The ex parte Young exception to sovereign immunity permits only prospective relief. And the relief that the plaintiff has requested is not something that can be granted. You know your time has expired. I do, Your Honor. And if this court has no further questions, we would just request that the court affirm the rulings of the lower court. Thank you, Your Honor. Did Appellant have some more time? I can't remember. No? Okay. Thank you, Counsel. Case is submitted. Counselor excused.